IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID LEE BARTON                                                  PLAINTIFF

                v.                        Civil No. 05-5073

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff David Lee Barton brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423, and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural and Factual Background**

The plaintiff filed his applications for DIB and SSI on May 21, 2003, alleging an onset date of October 4, 2002. (Tr. 103-106, 117, 210-212.) The applications were initially denied (Tr. 24-25; 28-29, 213-215) and those denials were upheld upon reconsideration (Tr. 26-27, 36-37, 220-221). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 38-47.)

On May 11, 2004, a hearing was held by the ALJ. The plaintiff was represented by counsel at this hearing. (Tr. 229-250.) The ALJ issued an unfavorable ruling on September 30,

2004, deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 9-19.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 7-8), which denied that request on April 22, 2005 (Tr. 3-6); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed his complaint with this court on May 3, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 7, 8.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 2.)

At the time of his hearing, plaintiff was 47 years of age and had completed sixth grade in school. (Tr. 235.) Over the fifteen years prior to filing his DIB and SSI applications, plaintiff worked as an oil well repairman, as a truck driver, and as a warehouseman unloading trucks for Wal-Mart, the job he held before his alleged disability. (Tr. 136-139, 162, 235-236.) In August 2002, plaintiff sustained injury when boxes fell on top of him while he was unloading a trailer. After he returned to work days later, plaintiff attempted to lift a box and suffered further injury to his back. Wal-Mart reassigned plaintiff to light duty, including sweeping and office work, however plaintiff was unable to do any of these tasks, so he was terminated. (Tr. 236-237.)

Following plaintiff's termination from his position as a warehouseman at Wal-Mart, he pursued a claim with the Arkansas Workers' Compensation Commission (AWCC), which resulted in a settlement on August 7, 2003. (Tr. 49-54.) Part of the AWCC files, which were submitted to the ALJ, contain some of the medical evaluations of Dr. David Davis, a Neurologist. (Tr. 96-100.)

Dr. Davis conducted an initial evaluation on January 9, 2003. In a January 9, 2003 letter to J. David Wall, an attorney at the Bassett Law Firm, Dr. Davis reported that plaintiff "has an amazingly stable low back with no disc degeneration except at L5-S1." Also Dr. Davis stated

that plaintiff had a "focal disc protrusion on the right which could slightly impinge upon the right S1 nerve root," but that the plaintiff was "reassured that for the most part, he is in good condition." Dr. Davis noted that plaintiff would attend Dr. Marty Hurlbut's back strengthening program at White Pines. (Tr. 98, 184.)

On February 13, 2003, Dr. Davis authored a letter to John McKinney of Claims Management, Inc. In this letter, Dr. Davis noted that plaintiff had been "having a progressive exercise program for functional restoration," but had indicated that "[h]e feels his back pain is no better, perhaps worse." Despite plaintiff's reported pain, Dr. Davis again told the plaintiff that "his low back looks remarkably normal." (Tr. 100.) In a March 13, 2003 letter to McKinney, Dr. Davis stated that plaintiff "had had no improvement in spite of both passive and active management programs, medication." Plaintiff was scheduled for "a lumbar myelogram and post myelogram CT." Dr. Davis noted that "[i]f there is neural impingement, then he can have a disc excision. If not, then he has reached maximal medical improvement in that there is little else to offer him in the way of further evaluation or treatment." (Tr. 182.)

On April 15, 2003, plaintiff had a myelogram lumbar exam. In the report, it was noted that plaintiff had a previous myelogram that resulted in meningitis. This exam was read by Dr. William C. Mills, III, who was impressed that there appeared to be "narrowing of the thecal sac at L3 and L4 levels" which could indicate spinal stenosis, and "clumping together of the patient's nerve roots predominately at the L4 and L5 level raising the possibility of arachnoiditis." Dr. Mills noted that both conditions would be evaluated further with a post myelogram CT scan. (Tr. 180-181.)

AO72A
(Rev. 8/82)

In the post myelogram CT scan, Dr. Mills found there was a moderate amount of spinal stenosis at L4-L5 and "the nerve roots are definitely clumped in two predominant clumps, right and left. This would be compatible with arachnoiditis." (Tr. 179.) In an April 24, 2003 letter, Dr. Davis reported to McKinney that plaintiff had arachnoiditis which was asymptomatic until the on-the-job accident which may have incited the low back and leg pain. Dr. Davis noted that he advised the plaintiff to apply for social security disability and that the pain would be treated with Neurontin. (Tr. 177.) On June 12, 2003, Dr. Davis sent a letter to Dr. Luke Knox in which he referred the plaintiff for a second opinion about potential surgery for his low back and leg pain. (Tr. 176.)

Dr. Knox examined the plaintiff on June 26, 2003, and found that surgical intervention was not warranted as the tests and examinations did not reveal significant compressive pathology. (Tr. 187-188.)

Plaintiff was seen by Dr. Alice Martinson, an orthopaedist, at the request of the ALJ. Dr. Martinson found that plaintiff "appears to have clinical and x-ray evidence of some arachnoiditis with lower lumbar nerve root irritation, but no loss of nerve function. His behavior during the examination is strongly suggestive of either a somatization disorder or conscious symptom magnification." Dr. Martinson recommended that a psychological evaluation be performed and considered by the ALJ. (Tr. 204-205.)

In a November 23, 2004 letter to the plaintiff's attorney, which was submitted as additional evidence to the Appeals Council, Dr. Davis noted that plaintiff had been seen for a follow-up examination on that day. Dr. Davis opined

-4-

> The thing of importance with his condition is that activity causes significant pain. He might have retention of function, but he cannot undertake normal daily activities because of aggravation of the pain associated with chronic spine arachnoiditis. My experience so far has been that people with this problem have significant pain uniformly.

(Tr. 226.)

At the ALJ hearing, plaintiff testified that Dr. Davis was his primary treating physician for the arachnoiditis, and that the condition is being treated with medications to treat the pain. (Tr. 238.) After taking Neurontin, plaintiff rated his pain as a 7 on a scale from 1 to 10. If he does not take the medication, he rates his pain as a 10. (Tr. 243.) Plaintiff testified that he experiences pain and burning in his back and numbness in his legs. (Tr. 240.) The pain is worse when the plaintiff begins moving and walking around. Plaintiff avoids bending, stooping, and lifting. After any strenuous exercise, plaintiff testified that he goes "down for six weeks every time." (Tr. 244-245.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

AO72A
(Rev. 8/82)

## Discussion

In the opinion, the ALJ restates, in great detail, the treatment and examinations the plaintiff received from Dr. Davis. The ALJ also describes the medical evidence received from Dr. Knox, Dr. Runnels, and Dr. Martinson. Then the ALJ proceeds to credit the opinions of Dr. Knox, who saw the plaintiff on one occasion for a second opinion concerning possible surgery, and Dr. Martinson, who evaluated the plaintiff on one occasion at the request of the ALJ. (Tr. 14-16.) The ALJ discredits the opinions of Dr. Runnels, who the ALJ contends based his assessment "primarily on subjective complaints, which I do not find to be fully credible." (Tr. 16.) At no point in the ALJ's analysis does the ALJ address the opinions and findings made by Dr. Davis, the plaintiff's treating physician for purposes of the arachnoiditis.

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *See Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991). A treating physician's opinion regarding the applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). The ALJ neglects to evaluate Dr. Davis's opinions and findings concerning the plaintiff's condition, and as such this matter must be remanded for further consideration. Further, the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. *See Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995.) Also, the regulations require the ALJ to "always give good reasons" for the weight given to a treating physician's evaluation. *See* 20 C.F.R. § 404.1527(d)(2).

AO72A
(Rev. 8/82)

Here, plaintiff's diagnosed condition is arachnoiditis, an inflamation of the delicate membrane interposed between the dura mater and the pia mater in the spine and brain, which can result from a previous case of meningitis and have varied signs and symptoms depending on the extent and location of the inflamation. *See Dorland's Illustrated Medical Dictionary* 118 (27th ed. 1988). Without explanation, the ALJ makes no evaluation of Dr. Davis's findings and opinion concerning the plaintiff's condition. This is especially bothersome in light of the fact that Dr. Davis is a neurologist and the plaintiff's condition is a neurological one. Further, the ALJ gives significant weight to the opinions of Dr. Martinson, who is an orthopaedist and who only examined the plaintiff on one occasion and made no findings or opinions based on CT exam or other tests that plaintiff had previously had performed.

Further, it is very troubling that the ALJ would credit as a finding Dr. Martinson's concern that plaintiff's actions during the examination could be suggestive of either a somatization disorder or conscious symptom magnification without the benefit of an examination by a proper mental health professional. Indeed, even Dr. Martinson suggested that the plaintiff received a psychological evaluation and that such evaluation be considered by the ALJ.

**Conclusion:**

Accordingly, the ALJ's decision denying DIB and SSI to the plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for consideration of the opinions of Dr. Davis, including the opinion expressed in Dr. Davis's letter to the plaintiff's attorney and presented to the Appeals Council as Exhibit 2. (Tr. 226.) Furthermore, the ALJ should consider whether psychological testing is appropriate in this matter.

AO72A
(Rev. 8/82)

DATED this 11th day of May 2006.

**/s/ Beverly Stites Jones**
_____
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**